1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   BENYAM KIDANE,                            No. C 05-5396 CW

11           Petitioner,                       ORDER DENYING
                                               PETITION FOR WRIT
12       v.                                    OF HABEAS CORPUS

13   THOMAS L. CAREY, Warden,

14           Respondent.

15   _____/

16

17       Petitioner Benyam Kidane is a prisoner of the State of

18   California who is incarcerated at California State Prison - Solano.

19   He has filed a pro se petition for a writ of habeas corpus pursuant

20   to 28 U.S.C. § 2254 in which he challenges the validity of his 2003

21   state conviction.  Respondent opposes the petition.  Having

22   considered all of the papers filed by the parties, the Court DENIES

23   the petition for a writ of habeas corpus.

24                              BACKGROUND

25       Unless stated otherwise, the following facts are taken from

26   the state court of appeal's September 23, 2004 denial of

27   Petitioner's appeal, or from the petition.

28

**United States District Court**
For the Northern District of California

I.   Facts

    A.   The Charged Offense

    On April 7, 1999, Mohammad Nazari was working as a cashier in a convenience store at a Shell station in Milpitas.  Between 9:00 and 10:00 p.m., a light-skinned black man, about eighteen to twenty years old, and between five feet four inches and five feet six inches tall, entered the store.  He was wearing a black jacket with a hood, a baseball cap, and white pants.  The man pointed a black revolver at Nazari and said, "Show your hands, don't touch nothing."  He also said that he didn't want any trouble, and just wanted the money in the register.  After Nazari handed him the money, the robber told Nazari to lift up the register drawer. Nazari did so, and showed that there was no money under the drawer. The robber also took some seventy-five-cent cigars from a box on the counter.  Before he left, the robber demanded the telephone receiver, disconnected the cord, and placed the receiver in his pocket.

    Nazari called the police from a pay phone.  Officer James Geibig responded to the call and obtained Nazari's description of the robber.  On June 8, 2002, more than two years later, Nazari examined a six-photo lineup that included Petitioner's photo. Nazari did not identify anyone as the robber.  However, Nazari identified Petitioner at trial as the robber and identified a jacket that had been found in Petitioner's car when he was arrested.

**United States District Court**
For the Northern District of California

2

B.   Other Crimes Evidence

    1.   The Davis Robbery of May 4, 1999

On May 4, 1999, Daniel Nielson was working at a convenience store at a Chevron station located off of Interstate 80 in Davis. Between 9:30 and 10:00 p.m., a black man, in his late teens or early twenties, about five feet ten inches tall, entered the store. The man wore a black jacket and baseball cap and pointed what looked like a nine-shot Herrington and Richardson .22-caliber revolver at Nielson.  The robber said something to the effect of "I'm sorry I have to do this," and told Nielson to give him all the money.  The robber also told Nielson to lift up the register drawers and give him the money that was there.  Nielson gave him between $150 and $200 in a plastic Chevron store bag.  The robber then told Nielson to unplug the handset from the telephone and hand it to him.  Nielson did so, and the robber left.  On May 6, 1999, Nielson positively identified Petitioner as the robber from a photographic lineup.  On October 3, 1999, Nielson did not identify Petitioner as the perpetrator from a live lineup.  At trial, Nielson testified that he recognized Petitioner from the May 4, 1999 robbery.[1]

    2.   The Vacaville Robbery of May 4, 1999

On May 4, 1999, officers responded to a robbery at about 10:20 p.m. at a Beacon gas station and convenience store in Vacaville. Officers found a 1972 Oldsmobile Cutlass parked across the street from the station.  Petitioner was lying on the back seat with a

_____

[1]  The state court of appeal's September 23, 2004 decision does not identify which trial this testimony is from.

3

United States District Court
For the Northern District of California

black jacket covering his head.  Officers searched the car and found:  a loaded nine-shot Herrington and Richardson .22 caliber revolver; a black hooded Timberland jacket[2] with $680 cash in a pocket; a plastic Chevron store bag containing $157; a pair of binoculars; four "Swift" brand cigars; and a toy cigarette lighter in the shape of a gun.  In front of Petitioner's car, in the bushes, officers recovered a telephone handset and a cord.

Officer Jeff Datzman spoke with Mackit Chalal, the clerk at the Beacon gas station.  Chalal told Datzman that he had been robbed at gunpoint at about 10:15 p.m.  Chalal described the robber as a black man in his twenties, about five feet six inches tall, wearing a dark jacket.  The robber initially acted like a regular customer by taking a beverage from the refrigerator and walking to the counter.  However, at the counter, the man took out a black steel revolver and said, "I want all your money." He also told Chalal to lift up the drawer in the cash register.  Chalal gave the money to the robber.  The robber then demanded the handset to the telephone and Chalal gave it to him.

Datzman later showed Chalal the gun found in Petitioner's car. Chalal identified it as the gun that the robber had used.  Chalal also positively identified Petitioner as the robber.

C.  Petitioner's Admissions

Officer Paul Nar interviewed Petitioner on May 6, 1999 at the Solano County jail about the robbery of the Chevron gas station in Davis.  Petitioner stated that he robbed a Chevron station but did

---

[2]  This was the jacket that Nazari identified at trial.

4

United States District Court
For the Northern District of California

not realize that it was in Davis, that he needed the money for his family, and that his mother had been after him to get a job. Petitioner also described the robbery to Nar, including demanding the handset from the clerk.  Petitioner stated that he received about $150 from the Chevron robbery, but that was not enough and he decided to stop in Vacaville and rob a Beacon gas station. Petitioner also told Nar that he used a .22 caliber nine-shot revolver with a three to four inch barrel.  Nar asked Petitioner to write a letter of apology to the victim and Petitioner did so.

II.  Procedural History

On July 20, 1999, a felony complaint was filed charging Petitioner with the Milpitas robbery, and a warrant was issued for his arrest.

On January 27, 2000 Petitioner was sentenced to thirteen years in state prison for the Vacaville robbery.

On June 22, 2000, Petitioner was notified of an outstanding warrant from Yolo County, and was transported there to face prosecution for the Davis robbery. On June 25, 2002, the charges against Petitioner for the Davis robbery were dismissed.

On July 18, 2002, Petitioner was transferred back to Ironwood State Prison in Riverside County.  On July 25, 2002, Petitioner was served with the Santa Clara County warrant for the Milpitas robbery.  Petitioner alleges that he was not given any notice of the warrant for the Milpitas robbery prior to this.

Petitioner proceeded to trial in Santa Clara County for the Milpitas robbery.  At trial, Petitioner testified that he could not remember what he was doing on the evening of April 7, 1999 but that

5

he did not rob the Shell station in Milpitas.  In May, 1999, Petitioner was twenty-two years old, five feet eight inches tall, and weighed about 150 pounds.  Petitioner admitted that he committed the robbery in Vacaville on May 4, 1999, but claimed that he used a toy gun.  He also admitted that he took a phone handset during the Vacaville robbery.

Petitioner testified that he did not rob a Chevron station in Davis on May 4, 1999, and that Officer Nar was lying when he testified that Petitioner confessed to this robbery.  Petitioner admitted that the weapon found in his car belonged to him, and that he had purchased it two days earlier.  Petitioner further testified that the signed apology for the Davis robbery was not written by him.  According to Petitioner, Nar lied "about anything that he's accusing me of."

The trial court admitted evidence of the Davis and Vacaville robberies to prove the issues of identity, common scheme or plan, intent, motive, and knowledge.  Chalal was unavailable as a witness at trial.  The trial court admitted statements Chalal made to Officer Datzman identifying Petitioner as the robber and the weapon found in Petitioner's car as the weapon used against him.

A jury found Petitioner guilty of robbery and found true the enhancement allegation that he used a gun.  On April 8, 2003, Petitioner was sentenced to three years in state prison for the robbery plus ten years for the gun enhancement.  The trial court ordered that the sentence be served concurrently with Petitioner's thirteen-year sentence for the Vacaville robbery.

On April 8, 2003, Petitioner appealed the judgment, claiming

that the trial court erred in admitting other crimes evidence and the hearsay statements of Chalal.  On July 1, 2004, Petitioner filed a petition for a writ of habeas corpus in the state court of appeals claiming that trial counsel was ineffective in failing to move for dismissal of the charges on speedy trial grounds.  On September 23, 2004, the state court of appeal affirmed the conviction and, by separate order, summarily denied the habeas petition.

On November 12, 2004, Petitioner filed in the California Supreme Court a petition for review of the denial of his appeal and a petition for review of the denial of his habeas petition.  These petitions for review contained the same claims as those in Petitioner's appeal and habeas petition filed in the state court of appeal.  On December 15, 2004, the California Supreme Court summarily denied both petitions for review.

Thereafter, Petitioner filed in the state court of appeal a motion to recall the remittitur.[3]  The motion to recall the remittitur contained two claims that were not included in Petitioner's appeal or habeas petition to the state court of appeal and the California Supreme Court.  These claims were that (1) Petitioner was erroneously denied pre-sentence custody credits in violation of his federal rights, and (2) trial and appellate counsel were prejudicially ineffective in failing to raise the

_____

[3]  A motion to recall the remittitur asks the California Supreme Court or court of appeal to reassert its jurisdiction over a case.  See Hayward v. Stone, 496 F.2d 844, 846 (9th Cir. 1974). It may be used as an adjunct to, or in place of, a state petition for a writ of habeas corpus in cases in which the appropriate remedy is the reinstatement of the appeal.  Id.

7

issue of pre-sentence custody credits.  Resp.'s Ex. I, Motion to Recall Remittitur.  On May 3, 2005, the state court of appeal summarily denied the motion to recall the remittitur.  On July 8, 2005, Petitioner unsuccessfully attempted to file a motion to recall the remittitur in the California Supreme Court; it was denied because the deadline to file it had passed on July 2, 2005. Pet.'s Traverse, Ex. 4.  Petitioner states that he was late in filing the motion to recall the remittitur in the California Supreme Court because the state court of appeal failed to notify him of its May 3, 2005 denial of his motion until June 24, 2005. (Pet.'s Traverse, Ex. 5.)

The present petition was docketed by the Clerk of this Court on December 29, 2005.  Petitioner presents five claims for relief: (1) that trial counsel was ineffective in failing to move for dismissal of the charges on speedy trial grounds; (2) that the admission of evidence of uncharged prior bad acts denied Petitioner his due process rights to a fair trial; (3) that the erroneous admission of hearsay evidence denied Petitioner his Sixth Amendment right to confront witnesses against him; (4) that Petitioner was erroneously denied pre-sentence custody credits in violation of his federal constitutional rights; and (5) that trial and appellate counsel were prejudicially ineffective in failing to raise the issue of pre-sentence custody credits at the time Petitioner was sentenced or on appeal.  Petitioner alleges that he has exhausted his state remedies regarding these claims.

LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of

8

1996 (AEDPA), a district court may grant a petition challenging a
state conviction or sentence on the basis of a claim that was
"adjudicated on the merits" in state court only if the state
court's adjudication of the claim: "(1) resulted in a decision that
was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court
of the United States; or (2) resulted in a decision that was based
on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."  28 U.S.C.
§ 2254(d).

Challenges to purely legal questions resolved by the state
court are reviewed under § 2254(d)(1); the question on review is
(a) whether the state court's decision contradicts a holding of the
Supreme Court or reaches a different result on a set of facts
materially indistinguishable from those at issue in a decision of
the Supreme Court; or (b) whether the state court, after
identifying the correct governing Supreme Court holding, then
unreasonably applied that principle to the facts of the prisoner's
case.  Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004).

The state court decision to which § 2254(d) applies is the
"last reasoned decision" of the state court.  Ylst v. Nunnemaker,
501 U.S. 797, 803-04 (1991).  The last reasoned decision
constitutes an "adjudication on the merits" for purposes of
§ 2254(d) if the court finally resolved the rights of the parties
on the substance of the claim, rather than on the basis of a
procedural or other rule precluding state review of the merits.
Barker v. Fleming, 423 F.3d 1085, 1092 (9th Cir. 2005).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Id.

DISCUSSION

I. Ineffectiveness of Trial Counsel in Not Raising Speedy Trial Grounds for Dismissal

A.   Ineffective Assistance of Counsel Legal Standard

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

For the first prong of the test, the relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. Babbitt v.

10

Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot establish incompetence under the first prong. Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

For the second prong of the test, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  Strickland, 466 U.S. at 688. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id. at 694.

Trial counsel is not ineffective for failing to raise a meritless motion.  Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005);  Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996); see, e.g., Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994) (failure to file suppression motion not ineffective assistance where counsel investigated filing motion and no reasonable possibility evidence would have been suppressed).

B.  Speedy Trial Legal Standard

California Penal Code § 1381, which governs state prisoners' rights to a speedy trial, provides:

> Whenever a defendant has been convicted, in any court of this state, of the commission of a felony or misdemeanor and has been sentenced to and has entered upon a term of imprisonment in a state prison . . . and at the time of the entry upon the term of imprisonment . . . there is pending, in any court of this state, any other indictment, information, [or] complaint, . . . the

United States District Court
For the Northern District of California

11

district attorney of the county in which the matters are
pending shall bring the defendant to trial . . . within
90 days after the person shall have delivered to said
district attorney written notice of the place of his or
her imprisonment . . . and his or her desire to be
brought to trial . . . In the event that the defendant is
not brought to trial . . . within the 90 days the court
in which the charge . . . is pending shall, on motion
. . . dismiss the action.

However, the ninety-day period under section 1381 is tolled
when the defendant has been made unavailable for trial in one
county by virtue of being detained in trial proceedings in another.
People v. Boggs, 166 Cal. App. 3d 851, 856 (1985).

When the prisoner makes a proper statutory "speedy trial"
dismissal motion under section 1381, he is not required to show any
prejudice from the delay between the filing of a complaint and
arrest.  People v. Martinez, 22 Cal. 4th 750, 766 (2000).  However,
a dismissal pursuant to section 1381, where the charge is a felony,
is not a bar to another prosecution for the same offense.  See Cal.
Penal Code § 1387; Crockett v. Superior Court, 14 Cal. 3d 433, 439
(1975).  A second prosecution is barred only if the defendant can
show "actual prejudice."  People v. Clark, 172 Cal. App. 3d 975,
980-81 (1985).

C.  Analysis

Petitioner claims that his trial counsel was prejudicially
ineffective in failing to raise speedy trial violations as grounds
for dismissal.  Petitioner's defense attorneys submit declarations
in which they state that they did not file a motion to dismiss on
state speedy trial grounds because they believed the prosecution
would refile the charges, rendering the motion to dismiss futile.
(Ex. A, B of Resp.'s Ex. D.)  Because Petitioner was sentenced for

12

United States District Court
For the Northern District of California

the Vacaville robbery on January 27, 2000, while the complaint for the Milpitas robbery was still pending against him, and wasn't served with the warrant for the Milpitas robbery until July 25, 2002, the ninety-day period was exceeded.  However, the two years that Petitioner was detained in trial proceedings for the Davis robbery, from June 22, 2000 to July 18, 2002, tolled the statutory time limit and provided good cause for the Santa Clara County prosecutor's failure to prosecute the Milpitas robbery.  <u>Boggs</u>, 166 Cal. App. 3d 851 at 856.  However, the five months between Petitioner's sentencing for the Vacaville robbery and his receipt of the warrant for the Davis robbery, i.e. January 27, 2000 to June 22, 2000, affect the statutory time limit.  Thus, the warrant for the Milpitas robbery was served at least two months after the ninety-day speedy trial period had lapsed for that charge.

Although Plaintiff may have obtained a dismissal of the Milpitas robbery charges on speedy trial grounds, the Santa Clara County prosecutor simply could have refiled the charges, forcing Petitioner to show actual prejudice to bar his prosecution. Defense counsel reasonably concluded that a motion to dismiss on speedy trial grounds was futile.

Citing <u>People v. Martinez</u>, 37 Cal. App. 4th 1589, 1596 (1995), Petitioner argues that, due to the prosecutor's delay in serving the warrant for the Milpitas robbery, he was prejudiced because he lost the opportunity to serve concurrent sentences.  However, after Petitioner filed his brief, the California Supreme Court in <u>People v. Lowe</u>, 40 Cal. 4th 937, 945-46 (2007), held that prejudice cannot be shown "solely because the delay in bringing the defendant to

13

trial has cost the defendant the chance to serve the sentence on

that charge concurrently with the sentence in another case."  The

<u>Lowe</u> court explained:

> If that were so, a delay in bringing a defendant to trial
> would require dismissal of even a very serious charge
> (such as murder), despite overwhelming evidence of the
> defendant's guilt, merely because the defendant was
> denied the potential benefit of serving some slight
> portion (perhaps only a few months) of the sentence for
> that crime concurrently with a sentence previously
> imposed in another case.  In that situation, the drastic
> sanction of dismissal would be grossly disproportionate
> to the harm that the defendant actually suffered--the
> mere possibility, however slight, that the sentence
> ultimately imposed for the dismissed crime might have
> been effectively reduced in some measure, however small,
> by concurrent service with the sentence for another
> crime.

<u>Id.</u>  The <u>Lowe</u> court disapproved <u>Martinez</u> on the issue of prejudice

due to the loss of the possibility of concurrent sentencing.  <u>Id.</u>

at 946 n.3.

Because trial counsel is not ineffective for failing to make a

meritless motion, the state court of appeal applied federal

ineffective assistance of counsel law reasonably to conclude that

counsel was not ineffective.

Petitioner did not establish that trial counsel's performance

was deficient; therefore, the state court of appeal did not need to

address whether Petitioner was prejudiced by counsel's performance.

II.  State Procedural Bar of Claim Regarding Admission of Evidence
     of Uncharged Prior Bad Acts

Petitioner failed to object in the trial court that the

admission of evidence of prior bad acts violated his constitutional

rights, and the state court of appeal deemed this issue to be

waived on appeal, citing <u>People v. McPeters</u>, 2 Cal. 4th 1148, 1174

1  (1992).

2       In cases in which a state prisoner has defaulted his federal

3  claims in state court pursuant to an independent and adequate state

4  procedural rule, federal habeas review of the claims is barred

5  unless the prisoner can demonstrate cause for the default and

6  actual prejudice as a result of the alleged violation of federal

7  law, or demonstrate that failure to consider the claims will result

8  in a fundamental miscarriage of justice.  Coleman v. Thompson, 501

9  U.S. 722, 750 (1991).

10       For a state procedural rule to be independent, the state law

11  basis for the bar must not be interwoven with federal law.  La

12  Crosse v. Kernan, 244 F.3d 702, 703 (9th Cir. 2001).  To be

13  "adequate," the state procedural bar must be "clear, consistently

14  applied, and well-established at the time of the petitioner's

15  purported default."  Calderon v. United States Dist. Court (Bean),

16  96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotations and

17  citation omitted).  In addition, to bar federal habeas review, the

18  state court must have clearly and expressly invoked the default

19  through a "plain statement."  Harris v. Reed, 489 U.S. 255, 265-66

20  (1989).

21       The Ninth Circuit has recognized and applied the California

22  contemporaneous objection rule to affirm denial of federal habeas

23  petitions on grounds of procedural default where there was a

24  complete failure to object at trial.  Inthavong v. Lamarque, 420

25  F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083,

26  1092-93 (9th Cir. 2004); Vansickel v. White, 166 F.3d 953, 957-58

27  (9th Cir. 1999) (claim was procedurally barred by an adequate and

28

15

United States District Court
For the Northern District of California

independent state ground where it was procedurally barred in state court for failure to object contemporaneously at trial).

The state court of appeals clearly and expressly found that Petitioner defaulted his claim, thus satisfying the Harris "plain statement" requirement.

Petitioner has not argued that there is cause for his default and actual prejudice as a result of the admission of evidence of prior bad acts, nor that failure to consider this claim will result in a fundamental miscarriage of justice. Thus, this Court is barred from reviewing this claim and denies it.

However, even if the claim were reviewed on the merits, it would fail. Habeas corpus relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Engle v. Isaac, 456 U.S. 107, 119 (1982); Peltier v. Wright, 15 F.3d 860, 861-62 (9th Cir. 1994). A state court's procedural or evidentiary ruling may be subject to federal habeas review only if it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). A federal court can disturb on due process grounds a state court's procedural or evidentiary ruling only if the ruling was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.) (1986).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Although the state appellate court did not consider
Petitioner's due process claim because the court found that
Petitioner had waived it, the court addressed and rejected
Petitioner's claim that the evidence was improperly admitted under
state law to prove identity.  <u>See</u> Resp's Ex. C, <u>People v. Kidane</u>,
Court of Appeal # H025825 5-8 (2004).  The state appellate court
reviewed California Evidence Code § 1101 which provides that prior
evidence of misconduct is inadmissible if it's used to establish
that the defendant possessed a disposition or propensity to commit
the charged offense.  The rule is not applicable to prior
misconduct evidence that shows a fact such as motive, opportunity,
intent, preparation, plan, or identity.[4]  The appellate court cited
<u>People v. Ewoldt</u>, 7 Cal. 4th 380, 404 (1994), which discussed how
prior misconduct can be probative of identity when "the uncharged
misconduct and the charged offense share common features that are
so distinctive as to support the inference that the same person
committed both acts.  The pattern and characteristics of the crimes
must be so unusual and distinctive as to be like a signature."  The
appellate court then compared the facts of the two uncharged

---

[4]California Evidence Code § 1101(a) provides:
". . . evidence of a person's character or a trait of his
or her character . . . is inadmissable when offered to
prove his or her conduct on a specified occasion."

California Evidence Code § 1101(b) provides:
"Nothing in this section prohibits the admission of
evidence that a person committed a crime, civil wrong, or
other act when relevant to prove some fact (such as
motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake or accident
. . . ) other than his or her disposition to commit such
an act."

17

offenses with the charged offense and found that the following facts showed that Petitioner was the perpetrator of both the Davis and Vacaville robberies:  (1) all three robberies occurred between 9:00 and 10:00 pm: (2) at all three robberies, the perpetrator used a gun, demanded money, including money stored under the cash register drawer; (3) in all three robberies, before the perpetrator fled on foot, he took the receiver of the telephone with him.  <u>Id.</u> at 7.  Based on these similarities, the appellate court concluded that the other crimes evidence was properly admissible as evidence of identity.

The appellate court also addressed the arguments Petitioner makes here, that the taking of the telephone receiver in each robbery was not sufficiently distinctive.  The appellate court noted that officers had testified that no one in their experience had ever reported that a robber removed the telephone receiver from the crime scene.  The appellate court also pointed out that the dissimilarities in the crimes raised by Petitioner were minor "and thus do not establish that the trial court abused its discretion in admitting the other crimes evidence."  <u>Id.</u> at 7-8.

Based upon the appellate court's analysis, it reasonably concluded that the other crimes evidence was properly admitted as evidence of identity.  This ruling was not arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Therefore, on the merits of this claim, the state court opinion was not contrary to, and did not involve an unreasonable determination of the facts in light of the evidence presented.  Habeas relief on this claim is not warranted.

III.   Erroneous Admission of Hearsay Evidence

The Confrontation Clause of the Sixth Amendment provides that the accused in criminal cases has the right to "be confronted with witnesses against him."  U.S. Const. amend. VI.  Out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause unless (1) the witnesses are unavailable, and (2) the defendant had a prior opportunity to cross-examine the witnesses.  Crawford v. Washington, 541 U.S. 36, 59 (2004).

On federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Petitioner claims that the admission of Chalal's identification statements violated his right to confrontation.  The state court of appeal concluded the admission of Chalal's identification statements was erroneous.  However, because other evidence indicated that Petitioner committed the prior Vacaville robbery, the state court of appeal found that the erroneous admission of Chalal's statements had no prejudicial effect upon the jury and was harmless.  This finding was not unreasonable.  The jury had before it evidence that approximately five minutes after the Vacaville robbery, police officers found Petitioner across the street from the gas station with a black jacket over his head.  A loaded revolver, a plastic Chevron bag containing $157, and $680 in cash were found in his car.  Petitioner also admitted that he decided to rob the Beacon station in Vacaville after he robbed the

Chevron station in Davis and he had been convicted of the Vacaville
robbery.  Moreover, even if Chalal's identification statements had
been excluded and the jury had not found that Petitioner committed
the prior Vacaville robbery, it is not likely that the jury would
have found that Petitioner did not commit the Milpitas robbery;
there was still strong evidence that Petitioner committed the
Milpitas robbery.  Therefore, the state court was reasonable in
concluding that the erroneous admission of Chalal's statements was
harmless.

IV.  Denial of Pre-Sentence Custody Credits

     Petitioner claims that he was erroneously denied custody
credits and that his appellate and trial counsel were prejudicially
ineffective for failing to raise this claim in state court at
sentencing or on appeal.

     A.  Pre-Sentence Custody Credits

     California Penal Code § 2900.5(a) provides, "In all felony and
misdemeanor convictions, either by plea or by verdict, when the
defendant has been in custody, including . . . any time spent in a
jail [or] prison . . . all days of custody of the defendant . . .
shall be credited upon his or her term of imprisonment . . . ."
However, California Penal Code § 2900.5(b) provides, "For the
purposes of this section, credit shall be given only where the
custody to be credited is attributable to proceedings related to
the same conduct for which the defendant has been convicted."  A
defendant cannot obtain credit for confinement prior to his
conviction unless he proves that but for the conduct which led to
the sentence against which he seeks credit, he would not have been

20

1  subjected to that custody.  People v. Bruner, 9 Cal. 4th 1178,

2  1193-95 (1995).

3      B.  Ineffective Assistance of Appellate Counsel

4      The Due Process Clause of the Fourteenth Amendment guarantees

5  a criminal defendant the effective assistance of counsel on his

6  first appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 391-405

7  (1985).  Claims of ineffective assistance of appellate counsel are

8  reviewed according to the standard set out in Strickland.  Miller

9  v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  A defendant

10 therefore must show that counsel's advice fell below an objective

11 standard of reasonableness and that there is a reasonable

12 probability that, but for counsel's unprofessional errors, he would

13 have prevailed on appeal.  Id. at 1434.  Appellate counsel does not

14 have a constitutional duty to raise every non-frivolous issue

15 requested by defendant.  Id. at 1434 n.10.  In many instances,

16 appellate counsel will fail to raise an issue because counsel

17 foresees little or no likelihood of success on that issue; indeed,

18 the weeding out of weaker issues is widely recognized as one of the

19 hallmarks of effective appellate advocacy.  Id. at 1334.  Appellate

20 counsel therefore will frequently remain above an objective

21 standard of competence and have caused the client no prejudice for

22 the same reason:  a decision not to raise a weak issue.  Id.

23      C.  Analysis

24      Under California Penal Code § 2900.5(a)-(b), Petitioner is not

25 entitled to presentence custody credits because the custody credits

26 he seeks are attributable to the Vacaville robbery proceedings, not

27 the Milpitas robbery proceedings.  The state court of appeal

28                              21

United States District Court
For the Northern District of California

therefore was not unreasonable in denying this claim.  In addition, because federal courts generally do not review state sentences that are within statutory limits, the Court denies this claim.  <u>Walker v. Endell</u>, 850 F.2d 470, 476 (9th Cir. 1987).

Because Petitioner was clearly not entitled to presentence custody credits under state law, no prejudicial error resulted from trial and appellate counsel not raising this issue.  The claim regarding the denial of presentence custody credits was weak and therefore, neither trial nor appellate counsel was ineffective in failing to raise it.

This Court will not address Respondent's arguments that these claims are unexhausted because they are denied on the merits.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

Dated:  8/24/07

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

KIDANE,

                 Plaintiff,

  v.

CAREY et al,

                Defendant.

_____/

Case Number: CV05-05396 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 24, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Benyam  Kidane P68906
California State Prison-Solano
P.O. Box 4000
Vacaville,  CA 95696

Juliet B. Haley
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco,  CA 94102-7004

Dated: August 24, 2007

                             Richard W. Wieking, Clerk
                             By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California